IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DANIEL RAY BROWN                                                          PLAINTIFF


                    v.                      Civil No. 06-3035


DANNY HICKMAN, Sheriff, Boone
County, Arkansas; JASON DAY, Jail
Administrator, Boone County Detention
Center; JASON SILVA, Boone County
Detention Center; and JASON PHIFER,
Boone County Detention Center                                            DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro

se and in forma pauperis.

The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the

Boone County Jail. Plaintiff contends his constitutional rights were violated in the following

ways: (1) he was subject to unconstitutional conditions of confinement; (2) he was retaliated

against for filing grievances; (3) the grievance procedure was inadequate; (4) he was subjected

to the use of excessive force (pepper spray); and (5) he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 23). Plaintiff filed a response to the

motion (Doc. 31). Because the court felt additional information was needed regarding plaintiff's

claims, a questionnaire was propounded (Doc. 33).

Plaintiff filed a timely response to the questionnaire (Doc. 34). The summary judgment

motion is before the undersigned for issuance of this report and recommendation.

-1-

## Background

Brown was booked into the Boone County Jail on March 22, 2006, on the following charges:  fleeing; revocation of a suspended sentence; possession of methamphetamine with intent to deliver; felon in possession of a firearm; possession of drug paraphernalia; no vehicle license; and simultaneous possession of drugs and firearms.  *Plaintiff's Response* (*hereinafter Resp.*) at ¶ 1.  Brown remained incarcerated at the Boone County Jail until his transfer to the Arkansas Department of Correction (ADC) on November 14, 2006.  *Id.* at ¶ 61.

On April 22nd, Brown submitted a grievance.  *Resp.* at ¶ 2; *Plff's Ex.* 1 at page 1.[1] Brown stated he understood that the use of the phones in the cells was a privilege and not a right but that Jailor Phifer seemed to have a problem with giving Brown "a right to this privilege."

Brown stated Phifer also had a problem with forgetting the televisions every Saturday and Sunday.  *Resp.* at ¶ 3; *Plff's Ex.* 1 at page 1.  Brown stated Phifer sometimes did not turn them on until lunch.  *Id.*  Brown indicated Phifer only did jail checks once or twice on the weekends. *Id.*  Brown stated these things were becoming frustrating.  *Id.*

In response, Brown was told he was correct the telephones and televisions were privileges.  *Resp.* at ¶ 4; *Plff's Ex.* 1 at page 1.  Brown was told the televisions had just been placed back in the jail after having been pulled for a month.  *Id.*  If the televisions became an issue again, Brown was told they would be removed.  *Id.*  As far as jail checks were concerned, Brown was told that would be looked into.  *Id.*

---

[1]The court will refer to the documents the plaintiff submitted as an exhibit with his original response to defendants' summary judgment motion (Doc. 31) as *Plff's Ex.* 1.  The exhibit contains seven pages.

AO72A
(Rev. 8/82)

On April 26th, Brown stated he had not had an attorney visit and his public defender would not communicate with him.  *Resp.* at ¶ 5.  Jason Day responded that Brown's legal concerns were between him and his attorney and that when he went to court he should inform the judge of his concerns or write the judge a letter.  *Id.*

Brown complained on April 28th that he had placed a call costing $7.40 to Mr. Pasthing's office which was accepted by his secretary.  *Resp.* at ¶ 6.  Brown then found out that Pasthing's secretary was married to an Arkansas State Trooper and Brown felt betrayed and that his civil rights were violated.  *Id.*  Pasthing was Brown's attorney.  *Id.* at ¶ 7.  Brown asked for and was provided with a form to file a civil rights action under 42 U.S.C. § 1983.  *Resp.* at ¶ 8.

On April 28th, Brown complained that he had been threatened by Drug Task Force Coordinator Greg Harris.  *Resp.* at ¶ 9(A).  Day responded by asking Brown what exactly he wanted Day to do.  *Id.*

Brown was asked to explain: how he was threatened; where he was when this occurred; and who was present when this occurred.  *Resp.* at ¶ 9(B).  Brown indicated he was threatened on March 22nd at the Boone County Jail during a post-Miranda interview conducted by Detectives Greg Harris and Tom Smith.  *Id.*  Harris threatened to go and arrest Brown's wife.  *Id.*  Brown indicates this is a separate matter but that he was coerced into a confession.  *Id.*

On April 29th, Brown submitted a grievance indicting that Phifer had a personal grudge against Brown and was retaliating against him for a prior grievance he submitted about Phifer's conduct.  *Resp.* at ¶ 10.  Brown indicated that the toilet in cell 7 overflowed at about 11:30 a.m. that day spilling water, fecal matter, and filthy bacteria on the cell floor.  *Id.* at ¶ 11.

-3-

Brown indicated that during Phifer's jail check at 1:00 p.m., Brown told Phifer about the overflow and he left and did nothing about it. *Resp.* at ¶ 12. At some time after 3:30 p.m., Brown indicates concerned inmates sought the attention of the jailor. *Id.* at ¶ 13(A). Specifically, Brown states the inmates were yelling in at attempt to get Phifer's attention. *Id.* at ¶ 13(B). According to Brown, Phifer came to the cell with a "red face, obviously angry" and asked Brown if he was yelling. *Id.* at ¶ 13(A).

Brown responded no but asked if a trustee could bring a mop. *Resp.* at ¶ 14. Brown indicates Phifer said the trustees could not be allowed out until after 4:00 p.m. *Id.* Brown also states Phifer refused to bring a mop bucket or a plunger. *Id.*

Brown complained that he had nothing to do with the clog. *Resp.* at ¶ 15. Brown indicated that he had to stick his hand into the toilet to clear the clog. *Id.* He also stated that he and the other inmates had to eat lunch with the filthy mess on the floor. *Id.*

Phifer submitted an incident report on April 29th stating that he had reviewed the video. *Defts' Ex.* 2 at page 4. Phifer noted that at 1017 hours Brown appeared to place an object in the commode. *Id.* At 1122, Phifer indicated Brown appeared to remove the object that looked like a cup from the commode. *Id.* Phifer reported that Brown then advised Phifer that the commode had overflowed. *Id. See also Resp.* at ¶ 18.

According to Phifer, Inmate John Williams stated that someone, who he was not going to name, stopped up the commode purposefully. *Defts' Ex.* 2 at page 4. Phifer looked into the cell and saw only a small amount of water on the floor. *Id.*

-4-

According to Brown, Williams is the guilty party and was coerced into writing a grievance on April 30, 2007. *Resp.* at ¶ 19.  Brown maintains Williams is a key witness.  *Id.* at ¶ 20(A).  Brown also asserts there was a large amount of water, fecal matter, filth, and harmful bacteria in the cell.  *Id.*  Brown maintains the video should show that Williams had reached through the bars and caused the problem.  *Id.* at ¶ 20(B).

As a result of the overflow and having to clear it by hand, Brown indicates he felt sick to his stomach and suffered stress and anxiety.  *Resp.* at ¶ 20(C).  Brown states he sought mental health services through Ozark Counseling Services by filling out a medical questionnaire.  *Id.* However, he doesn't believe they received his questionnaire.  *Id.*  Brown maintains Phifer's actions were taken in retaliation for Brown having filed a grievance against Phifer.  *Id.*

Brown states he is not sure what the clog was.  *Resp.* at ¶ 17.  He also denies that he was seen on any video placing anything to clog the toilet.  *Id.* at ¶ 16.  He asks that the video be reviewed.  *Id.*  He also contends he cleared the clog at a later time.  *Id.* at ¶ 17.

When Officer Silva came on duty, Brown, Charles Bailey, and Smokey McDonald were moved out of cell 7 and into cell 4.  *Resp.* at ¶ 21.  All inmates, including Brown, were advised that if the commode overflowed again due to debris they would be charged.  *Id.* at ¶ 22.

On April 30th, John Williams submitted a grievance stating that Brown wanted to cause problems because he did not like Phifer because of the telephones.  *Resp.* at ¶ 23.  Williams indicated that Brown had placed a cup in the toilet of cell 7 on April 29th to make it overflow and took it out an hour later.  *Id.*  Williams stated Phifer was always by the book.  *Id.* Williams indicated that he had no problems with anyone and everyone could get along if Brown would

shut his loud mouth.  *Id.*  Brown agrees that Williams made this statement, however, he states Williams was called out of his cell, given a cigarette, and coerced by Phifer.  *Id.*

Brown complained on May 2nd that he had not received the § 1983 forms that he had been requesting regarding his April 29th grievance.  *Resp.* at ¶ 24.  Brown stated the damage was done and he needed compensation for the incident.  *Id.*  He stated the flooded cell should not have been allowed to remain that way for 4 ½ hours and he should not have been required to unclog it with his bare hands.  *Id.*

Day responded by giving Brown a § 1983 form on May 7th.  *Resp.* at ¶ 25.  On May 21st Brown  submitted a grievance complaining that his request for copies of all his grievances was ignored.  *Id.* at ¶ 26.  Further Brown stated he wanted three sets of § 1983 forms.  *Id.*  He also asked that he be removed from his cell to be spoken with concerning lawsuits and/or his medical/mental appointments.  *Id.*  Brown stated personal scolding was not needed.  *Id.*

In response, Brown was told they would be glad to give him copies of all his grievances.  *Resp.* at ¶  27.  Brown was also told that he would be given a § 1983 form again after he gave them the other one back.  *Id.*  Finally, he was told he would be treated with respect so long as he was respectful himself which he had not been.  *Id.*

On May 21st Brown submitted a grievance stating that he was pulled out of his cell for a random search.  *Resp.* at ¶ 28.  Brown indicates he voiced displeasure over a strip search and was taken to the drunk tank by Sgt. Silva.  *Id.*  Brown indicated Silva left and Brown yelled because Silva had forgotten to strip search Brown.  *Id.*

-6-

Brown indicates Silva returned and told Brown angrily that he had been causing the jailors trouble. *Resp.* at ¶ 29. Brown asserts Silva left saying that if Brown made noise or yelled one more time he would be pepper sprayed. *Id.*

Brown states he saw there was urine on the drain. *Resp.* at ¶ 30. For this reason, Brown indicates he yelled to get Silva's attention. *Id.* at ¶ 30 & ¶ 32. Brown maintains Silva opened the door and sprayed him in the face. *Id.* at ¶ 30. Brown asserts he was sprayed twice in the face, hair, and body. *Id.*

At some point, Brown asserts Day made an appearance. *Resp.* at ¶ 30. Day stated Brown was kicking the door and yelling and had been warned three times. *Id.* at ¶ 31. Day stated he was in the hall and the application of pepper spray was necessary and did stop Brown's violent nature. *Id.*

Brown indicates he suffered burn "blister scars" to his face. *Resp.* at ¶ 32(C). Brown was allowed to wash the spray off but he does not know what time but he believes it was longer than fifteen minutes after he was sprayed. Id. at ¶ 32(D).

On May 21st Brown submitted a grievance stating that Christopher Helms had staph infection. *Resp.* at ¶ 33(A). Brown indicated Helms had been in Brown's cell, #7, the weekend before and on May 15th the toilet had broken before Helms could flush it during shower call. *Id.* Brown states the problem was not fixed and he remained in the cell until 22 hours later when he was moved. *Id.* Brown maintains this was in reprisal. *Id.*

Brown maintains Silva and Day had it in for him. *Resp.* at ¶ 33(B). He wonders "why else would a human being be left in a cell with feces in it for 22 hours." *Id.* Brown indicates

AO72A
(Rev. 8/82)

there were cells they could have been moved to or the toilet could have been fixed as defendants did for the next occupants of the cell within two hours. *Id.* He indicates four men had to urinate into the same toilet for twenty-two hours. *Id.* He asserts the jailers did not like him because he stood for being treated humanely. *Id.* He maintains his grievance appeals to the Sheriff were intercepted. *Id.*

In response, Brown was told that the plumber had been called and Brown was moved out of the cell. *Resp.* at ¶ 33(C). Brown was also asked how he knew Helms had staph infection. *Id.* Brown indicates Helms told Brown and others he had staph infection. *Id.* at ¶ 33(D). Brown states Helms had an open oozing wound under his nose and was taking two kinds of antibiotics. *Id.*

On May 26th, Brown complained that he had not received commissary in three weeks and that in order to file a lawsuit he needed paper, envelopes, and stamps. *Resp.* at ¶ 34. Day responded that Brown was given paper and envelopes. *Id.* He told Brown to seal the envelope and then the jail would put the proper postage on the envelope. *Id.*

On June 11th, Brown complained that his family was attempting to raise bond money and he needed to make phone calls. *Resp.* at ¶ 35. He was allowed to use the phone the following day. *Id.*

On June 13th, Brown complained that he had been lied to about seeing a psychiatrist. *Resp.* at ¶ 34. Brown complained that he was suffering and that jail personnel were aware of his anxiety disorder. *Id.*

Brown indicated he had no need to see Dr. Mayo. *Resp.* at ¶ 36(A). Dr. Mayo is a nurse practitioner that the jail uses. *Id.* Brown indicates inmates are charged $20 to see Mayo. *Id.*

In response, Brown was told he was on the waiting list and that he had been scheduled an appointment for June 15th, but the O.C.S. cancelled the appointment and the jail had no control over when O.C.S. saw him. *Resp.* at ¶ 37(A). Brown appealed the grievance and were again told that O.C.S. had cancelled the appointment and that the jail would take Brown when O.C.S. called for him. *Id.* at ¶ 38.

On June 16th, Brown submitted a grievance stating that he believed the grievance procedure at the jail was ineffective. *Resp.* at ¶ 39. He stated that his grievances were only answered part of the time. *Id.* He indicated he had requested three copies of § 1983 forms, had been denied medical treatment, and had been lied to. *Id.* He stated he suffered from paranoia and anxiety. *Id.* He asked for six copies of § 1983 forms. *Id.*

Day responded that Brown was given six copies of § 1983 forms that day. *Resp.* at ¶ 40. They were also going to fax Brown's medical request to the doctor's office. *Id.* Day asked what Brown had been lied to about and when Brown believed he was denied medical treatment and by whom. *Id.*

Day noted that Silva had given Brown copies of all his grievances but said that they would give him copies once again. *Resp.* at ¶ 41. Brown states he did not receive copies of grievances until that day. *Id.* Brown asserts he did not receive copies of all his grievances and that his appeals were routinely not answered. *Id.* at ¶ 42.

-9-

Brown was asked to explain when he was denied medical treatment, for what condition, and why he had not previously submitted a grievance or request for medical treatment. *Resp.* at ¶ 43. He responded:

> My face was blistered, I believe I did file a grievance that was unanswered. They did not like me. I let this go out of fear of getting pepper sprayed again.
>
> I was denied medical attention in respect to mental health at O.C.S. I did file grievances &appeals but never was given medical attention from 05-12-06 thru 11-14-06 when I left to ADC. (6 months). Boone County Jail was responsible for my needs, not O.C.S.

*Resp.* at ¶ 43.

Brown filed this civil rights lawsuit on June 14th. *Resp.* at ¶ 44. On July 24th, Day informed Brown that his lawsuit had been received by jail officials and for his benefit and the benefit of detention center officers the case would not be discussed. *Id.* Brown then told Day he was willing to work out a deal if they would have their attorneys contact him. *Id.*

On August 3rd, Brown submitted a grievance asking that the mail log be checked for three letters he mailed to Congressman John Boozman in early May through June of 2006. *Resp.* at ¶ 46. In response, Brown was told the mail log would be checked. *Id.*

On August 16th, Brown submitted a grievance complaining that he had been lied to and he still had not been to O.C.S. despite having been told his June 15th appointment had been rescheduled. *Resp.* at ¶ 47. Brown also stated he had been on medication before and may need it again. *Id.*

In response, Day stated that O.C.S. had cancelled the appointment and had rescheduled Brown. *Resp.* at ¶ 48. Day also stated that the doctor would not provide Brown with the

-10-

medication that O.C.S. prescribed.  *Id.*  Day said they could only take Brown to O.C.S. when they told them to.  *Id.*  He said Brown was not the only one on the waiting list.  *Id.*

According to defendants, on September 21st Brad Tramell and Silva went to do a cell check on cell 8.  *Defts' Ex.* 2 at page 2.  Defendants indicate Brown was taken in the drunk tank so a physical search could be done.  *Id.*  Because Brown was acting in a combative manner, defendants indicate Brown was taken to an isolation tank.  *Id.*

Defendants maintain that when they returned to the cell, Brown was yelling, screaming, and using foul language.  *Defts' Ex.* 2 at page 2.  They assert Brown was warned three times to be quiet.  *Id.*  On the fourth occasion, defendants maintain Brown was sprayed with a one second burst of OC pepper foam.  *Id.*

Following administration of the spray, Brown was taken to the sally port for decontamination and then taken to the shower.  *Defts' Ex.* 2 at page 2; Resp. at ¶ 55(A).  Tramell and Silva then returned to finish the cell search.  *Defts' Ex.* 2 at page 2.

Brown contends defendants' records are in error.  *Resp.* at ¶ 49.  He indicates this incident occurred on May 20th.  *Id.*  He indicates he was taken to an isolated area where the cameras did not work so that Silva could retaliate against him and pepper spray him.  *Id.*

Brown maintains he never yelled, screamed, or cursed.  *Resp.* at ¶ 52.  He also contends he was sprayed two times.  *Id.* at ¶ 54.

Brown indicates he received minor blisters on his face from the spray and also had some mental problems.  *Resp.* at ¶ 55(B).  Brown asserts he was abused by the system at the jail and lived in fear.  *Id.*

With respect to Sheriff Hickman, Brown contends Sheriff Hickman is supposed to answer grievance appeals. *Resp.* at ¶ 57(A). Brown asserts that he filed appeals but they were never answered and "conveniently disappeared." *Id.* Brown maintains Sheriff Hickman is responsible for the jail and the jail does not follow jail standards and the OC pepper spray policy was not followed. *Id.* Brown did not personally speak to, or communicate with, Sheriff Hickman during his incarceration at the Boone County Jail. *Id.* at ¶ 57(B).

With respect to Day, Brown contends Day: failed to protect Brown from cruel and unusual punishment; failed to properly process grievances; failed to ensure Phifer was not retaliating against Brown; allowed Silva to spray Brown; allowed unsanitary conditions to exist; denied Brown adequate medical care; and failed to ensure the jail was run according to jail standards and the pepper spray policy was followed. *Resp.* at ¶ 58.

With respect to Silva, Brown contends Silva sprayed him two times unnecessarily in the face with OC pepper spray on May 20th. *Resp.* at ¶ 59. Brown maintains Silva's actions were against the jail's own pepper spray policy and in retaliation for Brown filing grievances. *Id.*

With respect to Phifer, Brown contends Phifer retaliated against him for filing grievances. *Resp.* at ¶ 60. Specifically, Brown maintains Phifer purposefully left Brown and other inmates in a locked cell with a toilet that had overflowed for 4 ½ hours. *Id.* Brown also maintains he was taken by Phifer to the "sexual offender" cell. *Id.*

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that

-12-

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment.   We will address each claim separately.

### *Unconstitutional Conditions of Confinement*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).   In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

-13-

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Brown contends he was subjected to unconstitutional conditions of confinement on April 29th when he was required to remain in cell 7 for 4 ½ hours after the cell overflowed allegedly spilling water, fecal matter, and bacteria on the floor. In *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a

-14-

constitutional violation." *Id.* at 268. The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste. *Id.* at 269. It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years." *Id.* The Eighth Circuit noted that "the length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." *Id.* It noted that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.*

In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." *Smith*, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. *Id.*

In this case, Brown maintains the toilet overflowed at 11:30 a.m. on April 29th spilling water, fecal matter, and bacteria on the floor. *Resp.* at ¶ 11. At 1:00 p.m., Brown indicates Phifer was notified about the overflow. *Id.* at ¶ 12. Brown indicates he had to unclog the toilet with his hand and felt sick to his stomach as a result. *Id.* at ¶ 20(C). He also alleges he suffered mentally as a result. *Id.* The inmates were moved out of the cell when Silva came on duty. *Id.* at ¶ 21. The cell had remained flooded for 4 ½ hours. *Id.* at ¶ 21.

According to defendants, Brown placed an object in the commode at 10:17 a.m. causing the toilet to overflow. *Defts' Ex.* 2 at page 4. Defendants maintain Brown removed the object at 11:22 a.m. and then reported the toilet overflow to Phifer. *Id.* Defendants assert Phifer checked the cell and saw only a small amount of water on the floor. *Defts' Ex.* 2 at page 4.

-15-

Under the totality of the circumstances, we do not believe Brown's allegations rise to the level of constitutional significance. Taking the facts in the light most favorable to Brown, he was exposed to the overflowed toilet for only a short period of time, 4 ½ hours. We find no genuine issues of fact as to whether defendants were deliberately indifferent to the risk of harm to Brown posed by the overflowed toilet.

With respect to the broken flush button, Brown alleges that after an inmate who had staph infection used the toilet on May 15th the flush broken broke. *Resp.* at ¶ 33(A). For a twenty-two hour period beginning on May 15th, Brown indicates he remained in the cell with the inmate who had a staph infection despite the fact the flush button on the toilet was not fixed. *Id.* There was no overflow in this case. Rather, the inmates were merely forced to use a toilet that would not flush. Brown was told a plumber had been called and he was then moved out of the cell. *Id.* at ¶ 33(A) & ¶ 33(C).

Brown had limited exposure to the unsanitary condition and does not allege that he suffered any health consequences as a result. He was moved to a different cell the following day and a plumber called to fix the problem. Under the totality of the circumstances, we find no genuine issue of material fact exist as to this claim.

### *Retaliation*

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)(citation omitted); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)(same). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id. See also Dixon v. Brown*, 38 F.3d 379,

-16-

380 (8th Cir. 1994)("[W]hen retaliatory conduct is involved, there is no independent injury requirement.").

To prevail on his retaliation claim, Brown must demonstrate: (1) that he engaged in protected activity; (2) that the defendants in response took adverse action; and (3) that his protected activity was the cause of the retaliation. *See Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994)(threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure).

Brown filed a grievance about Phifer's conduct on April 22nd. *Resp.* at ¶ 2. Following the filing of this grievance, Brown contends Phifer retaliated against him in the following ways: (1) Phifer left Brown and other inmates in cell 7 with an overflowed toilet on April 29th, *see e.g., resp.* at ¶ 10; (2) Phifer coerced inmate John Williams into making a statement on April 30th blaming Brown for the April 29th toilet overflow in retaliation for Brown having submitted a grievance about Phifer's conduct, *see e.g., resp.* at ¶ 23; and (3) on April 30th Phifer placed Brown in cell 5 with the sexual offenders in order to humiliate him. Brown also contends Silva pepper sprayed him on May 20th in retaliation for his filing grievances. *Resp.* at ¶ 59.

"The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). "To avoid summary judgment, [Brown] must submit affirmative evidence [of] retaliatory motive." *Id.* (internal quotation marks and citation omitted).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison

-17-

officials must have broad administrative authority. *Graham*, 89 F.3d at 79.  For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489,  491 (2d Cir. 2001)(not every response to a prisoner's exercise of a constitutional right is actionable).  *See also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996)(per curiam)(Speculative and conclusory allegations cannot support a retaliation claim).

In this case, the grievance Brown submitted regarding Phifer's conduct was on April 22nd. The alleged retaliatory conduct taken by Phifer occurred on April 29th and April 30th.  The close time proximity between the protected conduct and the alleged retaliatory conduct could be suggestive of a causal connection between the two events.  *See e.g., Kipp v. Mo. Highway & Transportation Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)(examining temporal connection between the protected activity and the alleged retaliatory activity).  We note also that although defendants maintain Brown was responsible for the overflow on April 29th he does not appear to have been charged with a disciplinary violation as a result of his alleged actions.  We conclude there are genuine issues of fact that preclude summary judgment in Phifer's favor on this claim.

There is less evidence to suggest a causal link between the filing of any grievance and Silva's use of pepper spray against Brown on May 20th.  As discussed below, we believe there are genuine issues of material fact that preclude entry of summary judgment in Silva's favor on the excessive force claim Brown has brought regarding this same incident.  Out of an abundance of caution, we will therefore allow the retaliation claim arising out of the same incident to proceed against Silva.

However, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [the

-18-

plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)(internal quotation marks and citation omitted).  There is no evidence to suggest Jason Day or Sheriff Hickman were involved in any retaliatory conduct.  Accordingly, these defendants will be granted summary judgment on this claim.

### Denial of Access to an Adequate Grievance Procedure

Brown contends his grievances were not handled properly, he did not always get responses, he did not get copies, and the appeals were not processed.  However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his First Amendment rights, or that his ability to exercise any specific constitutional right was chilled by defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted).  *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*,

AO72A
(Rev. 8/82)

932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), *aff'd*, 6 Fed. Appx. 187 (4th Cir. 2001)).  "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

### Excessive Force

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Brown was a pretrial detainee.  In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979).  Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*.  The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency.   As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

-20-

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

According to Brown, OC pepper spray was used against him on only the one occasion on May 20th. *Resp.* at ¶ 49. Brown maintains the defendants' records that indicate pepper spray was used on him on September 21st are in error and are actually referring to the May 20th incident. *Resp.* at ¶ 49.

On May 20th, Brown concedes he was yelling and kicking the cell door of the drunk tank. *Resp.* at ¶ 32(A). Brown maintains he was sprayed twice by Silva and has blister scars on his face as a result of the application of the spray. *Id.* at ¶ 30 & ¶ 32(C).

Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). *But see Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir.

-21-

2006)("An application of pepper spray when an inmate is being compliant can provide a basis for an Eighth Amendment claim.").   The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496.

In this case, Brown states he was voicing "displeasure over [a] strip search" and then yelled at Silva after he left Brown in the drunk tank without remembering to search him.   *Plff's Ex.* 1 at page 4.  Brown admits he was warned that if he made any more noise he would be pepper sprayed.  *Id.*  Despite the warning, Brown states he yelled and kicked the cell door to get Silva's attention.  *Resp.* at ¶ 32(B).

In this case, we conclude there are genuine issues of material fact as to whether the use of force was reasonable under the circumstances.  Brown asserts that Silva left the area and then came back.  It appears Brown was in a cell and no threat to Silva or the other guards or the security of the facility at the time the pepper spray was used.

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation.  *Id.*  The court noted additional material issues included whether or not the plaintiff failed to comply with orders given by officers in the cell, whether the plaintiff was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before the application of the pepper spray, and whether the plaintiff suffered real injuries.  *Id.*

Brown submitted several grievances/medical requests but none mention needing medical attention as a result of the application of the pepper spray. *See e.g., Plff's Ex.* 1 at page 7; *Defts' Ex.* 1 at pages 3 & 5.   He does contend he submitted a grievance about his face being blistered but it went unanswered. *Resp.* at ¶ 43.  He asserts he let it go out of fear of getting pepper sprayed. *Id.*

Brown maintains the spray left "blister scars" on his face. *Resp.* at ¶ 31. We cannot say as a matter of law this is a de minimis injury.

With respect to Day, Brown contends he gave Silva the "ok" to spray Brown. *Resp.* at ¶ 57(A).  Brown indicates Day was present and authorized the use of the spray.  We therefore believe it is necessary to deny summary judgment in Day's favor on this claim also.  However, Brown has alleged no personal involvement of Sheriff Hickman or Phifer or other basis on which Sheriff Hickman or Phifer can be held liable for the use of the pepper spray.

### *Denial of Adequate Medical Care*

During his incarceration at the Boone County Jail, Brown was a pretrial detainee. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

-23-

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting  Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).  *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992).  "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an

-24-

excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).   In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976).  Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239.  *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Brown contends he was denied medical care for his face following application of the pepper spray on May 20th and he was denied mental health care at O.C.S. *Resp.* at ¶ 43.   With respect to the provision of mental health care, Brown maintains Boone County Jail was responsible for meeting his needs not O.C.S.  *Id.*

In connection with the alleged injuries to his face caused by the pepper spray, there is no indication in the summary judgment record that Brown submitted any requests for medical treatment.  Brown utilized form documents apparently provided by the defendants to submit grievances, medical requests, and appeals.  *See e.g., Plff's Ex.* 1; *Defts' Ex.* 1.  On the forms provided, the inmate fills in his name, cell number, indicates whether he is submitting a grievance, medical request, or appeal by placing a check mark in the appropriate area on the form, describes his problem, and signs and dates the form.  *See Plff's Ex.* 1; *Defts' Ex.* 1.

-25-

Brown submitted a number of grievances or requests addressing various problems.  He submitted a grievance regarding Silva spraying him with pepper spray but did not mention any injury to his face or any need for medical attention.  *Plff's Ex.* 1 at page 4.   That same day, he submitted a second grievance about having been left confined in a cell for twenty-two hours the weekend before with an inmate who had staph infection and a toilet that did not flush.  *Id.* at page 5.

With respect to his need for mental health care, Brown indicates he requested care by filling out a questionnaire on May 12th.  *Resp.* at ¶ 20(A).  On June 13th, Brown submitted a grievance stating he had been told by Silva several weeks ago that he had an appointment at O.C.S. in a few days.  *Defts' Ex.* 1 at page 5.  In response, Brown was told his appointment had been scheduled for June 15th but O.C.S. had cancelled it.  *Id.*  Brown indicated he suffered from paranoia and anxiety.  *Id.* at page 3.  On August 16th, Brown complained he still hadn't been to O.C.S.  *Plff's Ex.* 1 at page 7.

In this case, we believe there are no genuine issues of material fact as to whether defendants exhibited deliberate indifference to Brown's serious medical needs.  First, with respect to the alleged injuries to Brown's face, there is no indication he sought medical treatment for the alleged injuries or that defendants ignored an acute or escalating condition with respect to Brown's health.  *See e.g., Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001)("Like any other civil litigant [a pro se litigant is] required to respond to defendants' motion with specific factual support for his claims to avoid summary judgment").  Although he filed grievances regarding the application of the pepper spray, the grievances do not mention any injuries.

-26-

With respect to his need for mental health treatment, while there is evidence in the record that Brown requested appointments at O.C.S. over a period beginning sometime in May and lasting until August 16th, there is nothing in the record to establish Brown was harmed by this delay or that the delay was attributable to the named defendants. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment. To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ..." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations omitted). Brown submitted no evidence suggesting any delay in his obtaining treatment had a detrimental effect. He therefore failed to raise a genuine issue of fact with respect to this claim.

Moreover, there is no evidence the defendants were personally involved in scheduling appointments at O.C.S. or that they delayed in anyway in referring Brown to O.C.S. or advising O.C.S. that Brown wanted an appointment. Brown does not dispute the fact that O.C.S. cancelled Brown's June 15th appointment or that defendants merely provided transportation for inmates to O.C.S. appointments. *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). There is simply no basis on which defendants can be held liable for actions taken by O.C.S. staff. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

-27-

AO72A
(Rev. 8/82)

## <u>Conclusion</u>

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 23) be granted in part and denied in part.  Specifically, I recommend as follows:

(1) the motion be granted with respect to the plaintiff's claims that he was subjected to unconstitutional conditions of confinement, that the grievance procedure was inadequate, and that he was denied adequate medical care;

(2) the motion be granted with respect to all claims asserted against Sheriff Danny Hickman; and

(3) the motion be denied with respect to his claim that Jason Phifer and Jason Silva retaliated against him and his claim that Jason Day and Jason Silva used excessive force against him.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of August 2007.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)